West End Narrow Gauge Railroad Company, Respondent, *v.* Martin Almeroth, Appellant.

### December 12, 1882.

1. Railroads — Damages on Condemnation of Land — Practice. — On an application for the appointment of commissioners to estimate the damages on a condemnation of land for the use of a railroad, the defendant cannot file an answer putting in issue the legal existence of the corporation or its right to take the land.

2. Condemnation Proceedings — Practice. — The application should be supported by affidavit, and if it appears by counter affidavits, that the appellant has no color of right, the application should be refused.

3. —— On the hearing of exceptions to the commissioner's report on the ground that the defendant had been denied a jury trial, the defendant is entitled to a new appraisement and a jury to assess his damages.

Appeal from the St. Louis Circuit Court, Thayer, J. *Reversed and remanded.*

Klein & Fisse, for the appellant: The court committed error in refusing to allow the defendant to file the answer which he tendered. — *Schlicker* v. *Gordon*, 74 Mo. 534. The defendant was entitled, at his election, to have his damages assessed by a jury. — Const., Art. II., sect. 21; Rev. Stats., sect. 892.

B. D. Lee, for the respondent.

BAKEWELL, J., delivered the opinion of the court.

This is a proceeding under the statute, by a railroad corporation, to appropriate to the use of its road certain real estate of defendant.

The petition contains all the necessary allegations, and says that plaintiff has entered upon defendant's land with his consent, but cannot agree with him as to the proper compensation. It prays for the appointment of commissioners to assess damages, and is verified by the affidavit of plaintiff's president.

Defendant offered to file an answer which denied that the premises were necessary for plaintiff's road, that plaintiff and defendant could not agree as to compensation, and that defendant assented to plaintiff's entry, and admitted all other allegations of the petition.

The answer also set up that, in 1873, the St. Louis and Florissant Railroad Company instituted proceedings to appropriate this land, and that defendant in that case appealed from the judgment overruling exceptions to the commissioners' report; that the judgment was reversed and the cause remanded; that, pending this appeal, the St. Louis and Florissant Railroad Company was dissolved, and its franchise transferred to another corporation, which was in its turn dissolved and its property and franchises sold and conveyed to one Lionberger, who conveyed them to plaintiff; that, at this sale, defendant gave notice that he claimed that nothing in his land had passed to the St. Louis and Florissant Railroad or its successors; that the proceeding of the St. Louis and Florissant Railroad to condemn plaintiff's land was dismissed for want of prosecution, in January, 1881; that the last-named road entered on the land in question, and built and used its road over that land until its dissolution, and that its successors, including plaintiff, have continued to do so; and that plaintiff has had possession since March, 1879, to the exclusion of defendant, who instituted proceedings in ejectment, which are still pending.

Defendant says that plaintiff does not intend to construct a railroad over the premises in question, and that these proceedings are instituted in bad faith, merely to deprive defendant of his right to the verdict of a jury in the ejectment suit as to his damages.

The trial court refused to allow defendant to file this answer, and proceeded to appoint commissioners against defendant's objection. The commissioners reported the damages at $70, which amount plaintiff at once deposited with the circuit clerk. Defendant's exceptions to the report of commissioners were overruled. When the exceptions came up for hearing, defendant demanded a jury to try the same, and to assess the damages which he sustained by the taking of his land, which the court refused. The court excluded evidence of proceedings to condemn the land formerly instituted by the St. Louis and Florissant Railroad Company.

The only points insisted upon here, are the action of the trial court in refusing to allow the answer to be filed, in refusing a jury to assess damages, and in excluding evidence as to the former proceedings by another company.

1. The right to apply private property to public use in those emergencies which cannot be efficiently met in any other way, exists in the state as a necessary attribute of its sovereign power. It is exercised in every civilized government, and in this country, subject to the limitation as to not taking private property for public use without just compensation, which is embodied in the organic law of every state in the Union, as well as in the constitution of the United States. In exercising this right, a railroad corporation in Missouri must show, of course, an express warrant of the legislature in conformity to the organic law of the state; and, though the law delegating the exercise of this power is to be strictly construed, it must not be so construed as to make the exercise of the power through a railroad corporation a farce ( *Wells* v. *Railroad Co.*, 47 Me. 345 ), as

it would become if, in a summary proceeding, every land-holder could incidentally raise such issues as are presented by the answer which the defendant in the present case was not permitted to file.

The substantial provisions of our statute, so far as they relate to the present controversy, are as follows (Rev. Stats., sects. 892, 900) : —

When it is sought to appropriate lands by a corporation for public use, and the corporation and owner cannot agree as to compensation, or if the owner has no capacity to contract, or cannot be found, the corporation may apply to the circuit court of the county where the land lies, or to the judge thereof in vacation, setting forth the general direction of the road, a description of the real estate sought, the names of the owners, etc., and praying the appointment of three commissioners, or of a jury, to assess damages. The statute provides for service of summons upon the defendant or notice by publication, as the case may be, and directs that the court or judge in vacation, " on being satisfied that due notice of the pendency of the petition has been given, shall appoint three disinterested commissioners who shall be freeholders, resident in the county," etc., to assess the damages. They are to make their return, on oath, after view, to the clerk, which is to be filed and entered on the order-book of the court, and thereupon the company must pay to the clerk the amount so assessed, on making which payment, the company may hold the interest in the property appropriated for the uses named. There is a provision for execution if the damages are not paid, and for abandonment by the company within ten days. The party whose property is affected, is to be notified by the filing of the report, which may be reviewed by the court on written exception by either party filed ten days after notice. The court, on this review, " shall make such order therein as right and justice may require : " and on cause shown, may order a new appraisement. The new appraisement, at the

request of either party, shall be made by a jury, under the supervision of the court, as in an ordinary inquiry of damages. But, notwithstanding such exceptions, the company may proceed to construct its road, and any subsequent proceedings shall only affect the amount of compensation to be allowed..

Similar statutory provisions exist in New Jersey (Rev. Stats. N. J. 938, sect. 100), and it is there held that, in this summary proceeding, such questions as those raised by the answer which defendant proposed to file in the present case, will not be decided, and that, on an application for the appointment of commissioners to estimate the damages on a condemnation of land for the use of a railroad, the only inquiry that, as a general rule, will be made, is, whether the applicant has a *prima facie* right. *The State et al.* v. *Hudson Tunnel R. Co.*, 38 N. J. L. 17.

In that case, as in the one at bar, an attempt was made to raise issues as to the legal existence of the corporation, and the right to take defendant's land, and the court says:

" It seems very clear that such matters as these are not to be decided upon a summary proceeding of this nature. The application is simply to have commissioners appointed to ascertain the compensation to which the prosecutor will be entitled. On such application the right to take the land cannot be adjudicated. The appointment of the commissioners does not establish such right, nor has it any tendency to do so. It would be manifest injustice to the applying company to attempt to adjudicate, in this procedure, such a point, as a decision adverse to its rights would entirely frustrate the purposes of its organization, while a decision in its favor would have no efficacy in establishing its right to take the land. If this can be done then in a summary preceeding, in an incidental way, every landholder whose property is sought to be comdemned can challenge the legal existence and the corporate rights of such company to the same extent that the state can, by a

*quo warranto.* The nature of the proceeding, and all its methods, are inappropriate for such purpose. In form it is a mere summary application to a single judge, not sitting in court, without pleadings forming an issue, the officer being destitute of capacity to enter a judgment of record. The judicial conclusion could have but a unilateral effect; it would conclude, upon all the points decided, the applying company, but would leave its opponent unbound, and at liberty to assert the same rights before another forum. Nor would it seem that any limit could be put to this range of subjects to be investigated; all the grounds of the right of the applicant, and every matter of defence, would be equally open for discussion and decision. It is impossible that, by such a method, subjects of this kind can be satisfactorily investigated, or safely adjudged.''

The New York statute expressly provides that defendants may show cause against granting a petition for condemnation of property for public uses by a corporation and requires the court to hear proofs of the parties before the appointment of commissioners. 3 Rev. Stats. N. Y. 641, sect. 15. But we see nothing in our statute that authorizes the defendant to put in issue by a formal answer the allegations of the petition; and as the application may be made to a judge in chambers during vacation, it is evident that it does not contemplate any formal trial of such issues, or any judgment upon them, before the appointment of commissioners. The allegations of the petition should, we think, be supported by affidavits, and, if by counter affidavits it is made clear that plaintiff has no color of right to proceed, the court, or judge, should decline to appoint commissioners. But we think that the learned judge of the circuit court committed no error in refusing to allow the answer in the present case to be filed, and that doubtful questions of law or fact are not to be tried before the appointment of commissioners under the statute under consideration.

2. When the exceptions to the report of commissioners came on to be heard, it was shown that an unsuccessful effort had been made by plaintiff, before the institution of these proceedings, to agree with defendant as to compensation. Defendant then demanded a jury.

The constitution provides (Art. II., sect. 21), that " private property shall not be taken or damaged for public use without just compensation ;" and that, "such compensation shall be ascertained by a jury or a board of commissioners of not less than three freeholders, in such manner as may be prescribed by law." The old law (Rev. Stats. 1865, p. 352, sect. 1) was, after the adoption of the constitution of 1875, amended so as to provide for the appointment of commissioners or a jury. The corporation in its petition may call for either, and neither this constitutional provision, nor the legislative provision, gives to the defendant the right to demand a jury in the first instance. It would seem to be the meaning of the statute, that, only when a new appraisement is ordered on sustaining exceptions to the commissioner's report, a jury may be had,. on the application of either party. Rev. Stats., sect. 896. The law is plain enough in this respect, although by what seems to be an oversight or typographical error in section 892 the word " by " is inserted out of place, so as to make the statute read " praying the appointment of commissioners, or by a jury to assess damages."

But, although neither this clause of the constitution nor the statute under consideration, seems to authorize the defendant to demand a jury, and although it does not appear how a jury can be summoned at all during the vacation of the court on the order of a judge in chambers, it is clear that, if a jury is not appointed in the first instance, there is no provision for a finding as to compensation by a jury unless exceptions to the report of commissioners are sustained by the court under the provisions of section 896. The existing law, therefore, — unless the mere fact of appointing

commissioners according to its express directions is to be held a sufficient ground of exceptions to the commissioners' report, — seems to deprive the defendant of a jury trial contrary to the provision of the constitution of 1875 in the article on corporations (Art. XII., sect. 4), that " the right of trial by jury shall be held inviolate in all trials of claims for compensation when, in the exercise of [the] right of eminent domain, any incorporated company shall be interested for or against the exercise of said right." Under this provision, defendant was clearly entitled to have the question of compensation passed upon by a jury ; and as he could only assert and insure that right by making the denial of jury trial as to damages a ground of exception on hearing, on the coming in of the commissioners' report, the fact that a jury trial on this issue had been denied to him, was, in itself, under section 896, a good cause for sustaining exceptions to the report of the commissioners, and ordering a new appraisement, which, under· the provisions of that section, must be by jury.

The existing law seems to have been framed without regard to the constitutional provision in section four of the twelfth article of the constitution of 1875. How far it should be modified to comply with that provision, is a matter for the consideration of the legislature. It is plain that defendant was entitled to a jury upon the question of compensation; and, as he demanded a jury, and this right, which he does not appear to have waived, was denied to him by the action of the court before which the proceedings were held, the judgment must, upon this ground, be reversed.

There is nothing in the record from which it appears that defendant expressly demanded a jury before the filing of the commissioners' report. The answer which he asked leave to file, sets up that, by the appointment of commissioners, he will be deprived of a jury trial in his ejectment proceedings as to the question of damages ; but this does

not seem to be to the purpose. But defendant objected to the appointment of commissioners, and saved an exception to that action of the court; and he never waived a jury or consented to a trial of the question of damages by any other mode than by a jury. Nor does it appear that, under the law, the court was bound to appoint a jury until after the commissioners' report. Perhaps defendant might except to the report and then waive all right to a jury trial. If the proceedings had been before a judge in vacation, it is manifest that he must have appointed commissioners, as he could not order a jury; and we are inclined to think that, under the law as it now stands, the only proper course is to appoint commissioners in the first instance, and then, if that action is made ground of exception on the coming in of the report, to set it aside and give a jury to try the question of damages. However that may be, the defendant cannot be deprived of a jury trial where it is guaranteed to him by the constitution, without some action on his part preserved upon the record which shows a waiver of a jury and the submission by him of the question of fact to some other tribunal. *Brown* v. *Hannibal, etc., R. Co.*, 37 Mo. 298.

The judgment is reversed and the cause remanded. All the judges concur.